UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated, *Plaintiff*, v. CREDITGUARD OF AMERICA, INC., a Florida corporation, *Defendant*. | Case No. **CLASS ACTION** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jourey Newell brings this class action under the Telephone Consumer Protection Act against CreditGuard of America, Inc. ("CreditGuard" or "Defendant"), to stop Defendant from making unauthorized automated calls and to obtain redress for all persons similarly injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1. This case is brought to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). It challenges Defendant's practice of making unauthorized automated calls promoting their goods and services.

2. Mr. Newell and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of

1

potential customers *en masse*, Mr. Newell brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of CreditGuard. Plaintiff also seeks an injunction requiring Defendant to cease making unsolicited automated calls to consumers.

3.      A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

4.      Plaintiff Newell is a Pennsylvania resident.

5.      Defendant CreditGuard of America, Inc. is a Florida corporation with its principal place of business at 791 Park of Commerce Blvd., Suite 500 in Boca Raton, FL, with a registered agent of Roger Costa at the same address.

## JURISDICTION & VENUE

6.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

7.      The Defendant is subject to personal jurisdiction by maintaining their principal place of business in this District.

8.      Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made from this District and because the Defendant resides in this District

## TCPA BACKGROUND

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No.

2

102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

3

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The Growing Problem of Automated Telemarketing</u>

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

15. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

16. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

17. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

18. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

19. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

## FACTUAL ALLEGATIONS

20. CreditGuard is a debt consolidation firm.

21. To increase its sales, and as part of a general cold-call based marketing scheme, CreditGuard makes automated calls to consumers.

<u>The Original Calls to Mr. Newell</u>

22. Plaintiff Newell is a "person" as defined by 47 U.S.C. § 153(39).

23. Mr. Newell's telephone number, (484) 250-XXXX, is registered to a cellular telephone service.

24. In February of 2019, Mr. Newell received a series of automated calls from the Defendant.

25. Mr. Newell alerted the Defendant to the alleged TCPA violations.

26. Mr. Newell then resolved those claims.

<u>The Recent Calls to Mr. Newell</u>

27. Despite the prior notice to the Defendant, Mr. Newell continued to receive automated calls.

28. Mr. Newell was called by CreditGuard on June 14, 18 and 19, 2019 to his cellular telephone number, (484) 250-XXXX.

29. When Mr. Newell answered the call, there was a distinctive click and a pause.

30. This click and pause is a telltale sign of a predictive dialer.

31. The click and pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

32. On each of the calls, Mr. Newell was offered the Defendant's goods or services.

33. On the third call, Mr. Newell was sent an e-mail from pdavidson@creditguard.org confirming that the Defendant had called him all three times.

34. Unfortunately, the Plaintiff is not alone in unwanted receipt of these calls.

35. The Plaintiff received all of the calls from the Caller ID (206) 451-8256.

36. The website "Should I Answer" has given this Caller ID a "NEGATIVE UNSOLICITED CALL" rating, with 21 complaints about that number. *See* https://www.shouldianswer.com/phone-number/2064518256 (Last Visited June 24, 2019).

37. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed the solitude of Plaintiff and the class.

## CLASS ACTION ALLEGATIONS

38. Accordingly, Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **TCPA Class**: All persons who, on or after four years prior to the filing of the initial complaint in this action, (1) received a pre-recorded voice or automated call made using the same or similar dialing system that was used to contact the Plaintiff, (2)

to their cellular telephone number, (3) made by or on behalf of Defendant, (4) for the same purpose Defendant called Plaintiff, and for whom (5) Defendant does not claim to have obtained prior express written consent, or claim to have obtained prior express written consent in the same manner they claim to have obtained prior express written consent from Plaintiff.

39. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

40. **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made unsolicited prerecorded voice message calls to thousands of individuals who fall into the Class definition. Class membership can be easily determined from Defendant's records.

41. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is a member of the Class, and if Defendant violated the TCPA with respect to Plaintiff, then it violated the TCPA with respect to the other members of the Class. Plaintiff and the Class sustained the same damages as a result of Defendant's uniform wrongful conduct.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) How Defendant gathered, compiled, or obtained the telephone numbers of

...

    Plaintiff and the TCPA Class;

  b) Whether the calls were made for the purpose of marketing Defendant's products and/or services;

  c) Whether Defendant made some or all of the calls without the prior express written consent of Plaintiff and the TCPA Class;

  d) Whether Defendant's conduct was willful and knowing such that Plaintiff and the TCPA Class are entitled to treble damages.

43. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiff.

44. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class, not on facts or law applicable only to Plaintiff.

45. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it

would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the TCPA Class)**

46. Plaintiff repeats and realleges the allegations of paragraphs 1 through 45 of this complaint and incorporates them by reference.

47. Defendant and/or their agents made unsolicited calls to Plaintiff and the other members of the TCPA Class using an autodialer.

48. Defendant made these autodialed calls *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

49. Defendant's conduct was negligent or willful and knowing.

50. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).

51. As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

52. Plaintiff and members of the putative Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.   An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firm

representing Plaintiff as counsel for the Class;

      B.      Injunctive relief prohibiting Defendant from calling cellular phone numbers using an artificial, automated, or prerecorded voice and/or an autodialer;

      C.      monetary damages; and

      D.      Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Newell requests a jury trial.

Dated: June 25, 2019.

                              */s/ Avi Kaufman*
                              Avi R. Kaufman (FL Bar no. 84382)
                              kaufman@kaufmanpa.com
                              Rachel E. Kaufman (FL Bar no. 87406)
                              rachel@kaufmanpa.com
                              KAUFMAN P.A.
                              400 NW 26th Street
                              Miami, FL 33127
                              Telephone: (305) 469-5881

                              *Counsel for Plaintiff Jourey Newell*
                              *and all others similarly situated*