UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. .: 9:19-CV-80834-DMM

JOUREY NEWELL, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.

CREDITGUARD OF AMERICA, INC.,
a Florida corporation,

      Defendant.

_____/

## DEFENDANT CREDITGUARD OF AMERICA, INC.S' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant CreditGuard of America, Inc. ("CGA"), by counsel and pursuant to Rules 12(b)(3) and 12(b)(6), Fed. R. Civ. P., moves to dismiss this action in its entirety for two reasons. First, venue is improper in this Court because Plaintiff Jourey Newell ("Plaintiff") is bound by a mandatory forum/venue selection clause requiring that any claims between them be brought exclusively in Pennsylvania. Second, Plaintiff's CGA is a tax-exempt nonprofit organization, and did not violate the TCPA in any respect based on the restrictions applicable to CGA.  In support of this Motion, CGA states as follows:

### INTRODUCTION

Plaintiff's Complaint asserts a single cause of action for an alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"). The Complaint must be dismissed because: (1) Plaintiff executed a Settlement Agreement and Release ("Settlement Agreement") on March 18, 2019, mandating that the exclusive forum for "any future dispute between them" are courts in the State of Pennsylvania; and (2) the claim results from the

allegation that CGA violated a heightened standard for consent that is inapplicable to it as a tax-exempt nonprofit organization in accordance with Section 501(c)(3) of the Internal Revenue Code. *See* 47 C.F.R. 64.1200(a)(2).

Accordingly, CGA seeks the entry of an Order dismissing the Complaint for improper venue, and alternatively, dismissing the individual and putative class claims pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state claim.

## FACTUAL BACKGROUND

On March 18, 2019, CGA and Plaintiff entered into the Settlement Agreement, pursuant to which they resolved certain disputes between them.  A true and correct copy of the Settlement Agreement is attached hereto. *See* Declaration of Shon Lees, the Chief Financial Officer of CGA, dated July 25, 2019 ("Lees Decl.") ¶ 5, Ex. 2, attached hereto as **Exhibit A**.[1]  As part of the consideration for entry into the Settlement Agreement, Plaintiff agreed, in no uncertain terms, that the exclusive forum for "any future dispute between" the parties are courts in the State of Pennsylvania.  *See* Settlement Agreement, ¶ 6.  Specifically, the forum/venue selection clause provides, in relevant part:

> [t]he parties consent to the jurisdiction of the courts in the State of Pennsylvania and agree that venue in ***any future dispute between them*** shall be proper in this forum ***only***.

*Id.* (emphasis added).

---

[1]    The Court may properly consider the Lees Declaration and the documents attached thereto (including the Settlement Agreement) in adjudicating this Motion to Dismiss. "In considering a motion to dismiss for improper venue, "the court may consider matters outside the pleadings such as affidavit testimony…" *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, at 1321 (S.D. Fla. 2010) (Cooke, J.); *Wai v. Rainbow Holdings,* 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (Altonaga, J.) (quoting *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (Gold, J.)).

The parties' use of the word "only" renders the forum-selection clause mandatory, rather than permissive.  Plaintiff's filing of the suit in Florida is in direct contravention to the parties' agreement to venue for future disputes "only" in Pennsylvania.  Accordingly, the Complaint must be dismissed for improper venue in accordance with Rule 12(b)(3), Fed. R. Civ. P.

In addition, the Complaint suffers from a material deficiency that also merits dismissal. CGA is a tax-exempt nonprofit organization in accordance with Section 501(c)(3) of the Internal Revenue Code. *See* Lees Decl., Ex. 1. The TCPA and its concomitant implementing regulations afford such organizations favored treatment relative to similarly situated for-profit entities. Specifically, as applicable to this matter and pursuant to the rulemaking authority enumerated to it by 47 U.S.C. § 227(b)(2) to implement the TCPA, the Federal Communications Commission ("FCC") promulgated 47 C.F.R. § 64.1200(a)(2), which provides, *inter alia*, that:

> [n]o person or entity may [i]nitiate, or cause to be initiated, any telephone call that includes an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephones numbers described in paragraphs (a)(1)(i) through (iii) of this section, *other than a call made with the . . . prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization . . .*

*Id.* (emphasis added).

Prior express consent is a lower standard of consent than prior express *written* consent, which is explicitly defined by 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic dialing system…" The written consent requirement is not applicable to CGA.  Consequently, Plaintiff's assertion that CGA is liable under the TCPA for its failure to obtain prior express *written* consent

(Compl., ¶¶ 13, 38, 42) falls flat.  As such, the Complaint asserts a claim against CGA for which relief cannot be granted and must be dismissed.

## **LEGAL STANDARD**

In ruling on a motion to dismiss, the Court must take the factual allegations of a complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Crenshaw v. Specialized Loan Servicing, LLC*, No. 16-CV-81215, 2016 WL 4440511, at *1 (S.D. Fla. Aug. 23, 2016) (Bloom, J.), *aff'd,* 688 F. App'x 713 (11th Cir. 2017).  However, the Court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege specific facts "to raise a right to relief above the speculation level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of surviving a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court may disregard patently implausible factual claims. *Id.* Furthermore, "motions to dismiss upon the basis of choice-of-forum . . . clauses are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3) as motions to dismiss for improper venue." *Lipcon v. Underwriters at Lloyd's,* 148 F.3d 1285, 1290 (11th Cir. 1998). It is Plaintiff's burden to show that venue is proper in a given forum. *See Poschmann v. Ponte Vedra Corp.*, No. 18-14321-CV, 2018 WL 7890201, at *2 (S.D. Fla. Dec. 27, 2018) (Middlebrooks, J.); *Crenshaw*, 2016 WL 4440511, at *1 (collecting cases).

## **ARGUMENT**

I.     **The Settlement Agreement's Forum Selection Clause Expressly Demonstrates that Venue is Improper in this District**

Approximately three months prior to filing the Complaint, Plaintiff entered into the Settlement Agreement with CGA resolving certain claims it had or might have had against CGA.

*See Lees Decl.* ¶ 5, Exhibit 2.  The Settlement Agreement was negotiated at arms-length between the Parties, and the forum selection clause was a material term thereto.

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not necessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

*Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568, 583 (2013).

Indeed, in executing the Settlement Agreement, Plaintiff agreed that the document was "carefully read" and that the "contents [were] known and understood." *See* Settlement Agreement, ¶ 5. Each party acknowledged that they either "received, or have had the opportunity to obtain if they so choose, independent legal advice from the attorneys of their choice with respect to the preparation, review, and advisability of executing" the Settlement Agreement. *Id.* Plaintiff further agreed that he executed the agreement "after independent investigation and without fraud, duress, or undue influence." *Id.*

It therefore cannot be disputed that the parties (1) agreed that the proper venue for "any future dispute between them" were Courts in the State of Pennsylvania, and (2) acknowledged that they understood that obligation.

Courts in "this Circuit appl[y] the test established in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) when reviewing a forum-selection clause." *Kostelac v. Allianz Global Corporate & Specialty AG*, 517 Fed. Appx. 670, 675 (11th Cir. 2013).  According to *Bremen*, a forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.*  Forum selection clauses

5

have been found unreasonable where (1) the clause's formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of [his] day in court because of the inconvenience or unfairness of the chosen forum; (3) the clause is fundamentally unfair such that the law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy. *Lipcon*, 148 F.3d at 1292. None of these exceptions apply here.

<u>First</u>, there is no credible argument that the forum-selection clause's formation was induced by fraud or overreaching, as Plaintiff expressly acknowledges the *lack* of fraud, duress, or undue influence in executing the Settlement Agreement. *See* Settlement Agreement, ¶ 5.

<u>Second</u>, Plaintiff has the ability to assert these same claims in the proper forum, Pennsylvania, and thus, the mandatory forum selection clause would not deprive him of his day in court.  Also, Plaintiff is a resident of Pennsylvania (Compl., ¶ 4).  Thus, Pennsylvania is not an inconvenient or unfair forum.

<u>Third</u>, to the extent that any public policy considerations are implicated here, they lead to the conclusion that the forum selection clause should be enforced, not the other way around, as there is a strong public policy *in favor* of the presumptive validity and enforceability of mandatory forum-selection clauses. *See Slater v. Energy Servs. Group Int'l*, 634 F.3d 1326, 1331 (11th Cir. 2011); *Krenkel v.  Kerzner Int' I Hotels, Ltd.*, 579 F. 3d 1279, 1281 (11th Cir. 2009) (Forum selection clauses are "presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances").

Finally, as this Court is well aware, forum selection clauses are classified as either permissive or mandatory. A mandatory clause (like here) dictates an *exclusive* forum for litigation. *See Global Satellite Commun. Co. v. Starmill U.K. LTD*, 378 F.3d 1269, 1272 (11th

Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). Permissive clauses merely authorize jurisdiction in a designated forum but does not prohibit litigation elsewhere.  Here, the language of the forum-selection clause leaves no doubt that it is mandatory in nature, and that this dispute is covered by the clause.

The clause provides for a single designated forum using the requisite language of exclusivity.  *See* Settlement Agreement, ¶ 6 ("[t]he parties consent to the jurisdiction of the courts in the State of Pennsylvania and ***agree that venue in any future dispute between them shall be proper in this forum only***." (emphasis added). *See Pelican Ventures LLC v. Azimut S.p.A.*, No. 03-cv-62119, 2004 WL 3142550, at *3 (S.D. Fla. July 28, 2004) (Klein, M.J.) ("The black letter rule is that for a forum selection clause to be mandatory, it must be clear, unequivocal, and contain language of exclusivity."). The clause here leaves no room for uncertainty as to whether there are other permitted fora. Also, the clause applies to "any future dispute between" the parties. This unequivocally demonstrates that the instant dispute falls within its scope.

Accordingly, this action is due to be dismissed pursuant to Rule 12(b)(3), Fed. R. Civ. P., as Plaintiff filed this action in the wrong venue. *See Poschmann,* 2018 WL 7890201, at *2 (Middlebrooks, J.) (dismissing case for improper venue); *M Tobacos, Inc. v. Case*, No. 14-CV-81481, 2015 WL 11438107, at *4 (S.D. Fla. Apr. 17, 2015) (Middlebrooks, J.) (dismissing case for improper venue); *Green Island Holdings, LLC v. British American Isle of Venice (BVI), Ltd.*, 2009 WL 1730954 (S.D. Fla. June 18, 2009) (Marra, J.) (dismissing case for improper venue pursuant to Rule 12(b)(3)); *Uribe v. Tuscany Preserve Development, Inc.*, No. 08-cv-2283, 2009 WL 111667 (M.D. Fla. Jan. 15, 2009) (same).

**II.      Alternatively, Plaintiff's TCPA Claim Fails Because Plaintiff Has
Not Properly Pled That CGA Violated Any Provision of the TCPA**

If this Court were to somehow find that Plaintiff's claim is proper in this Court (it is not), the claim nonetheless fails.

CGA is a tax-exempt nonprofit organization pursuant to Section 501(c)(3) of the Internal Revenue Code. Such organizations have been afforded substantially more lenient treatment with respect to the compliance requirements of the TCPA by the FCC. As it relates to calls placed to cellular telephones, such as those at issue in the Complaint, the FCC has promulgated 47 C.F.R. § 64.1200(a)(2), which provides for substantially relaxed consent requirements, as compared to calls placed by or on behalf of for-profit entities.

Specifically, whereas calls placed to cellphones by or on behalf of for-profit entities must be initiated with the prior express *written* consent of the called party, the same calls placed by or on behalf of tax-exempt nonprofit organizations (like CGA) need only be initiated with the prior express consent of the called party.[2]  The distinction is significant, and the Complaint's failure to either recognize or account for that distinction is a fatal deficiency that warrants dismissal. Indeed, it would be impossible to hold CGA liable for noncompliance with a requirement that it is not obligated to satisfy.

In 2012, the FCC issued a rule that "established a two-tier system of consent, with the two tiers being 'prior express consent' and 'prior express *written* consent.'" *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 477 (S.D.N.Y. 2018) (quoting 47 C.F.R. § 64.1200(a)). As a result of the 2012 rule change, the FCC "altered the requisite form of prior

---

[2]      Emblematic of the TCPA-related favored status that the FCC affords nonprofit organizations, the FCC has also promulgated a rule providing for a categorical exemption from liability for such organizations under the statute with respect to calls placed to residential landlines.  *See* 47 C.F.R. § 64.1200(a)(3)(iv).

express consent for all autodialed or prerecorded calls to wireless numbers and residential lines, specifically that prior consent to be contacted must be written and setting forth disclosures that must be made when obtaining prior consent." *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1306 n.4 (11th Cir. 2015). By virtue of 47 C.F.R. 64.1200(a)(2), however, the FCC ensured that the standard of consent applicable to calls placed to cellphones by or on behalf of tax-exempt nonprofit organizations, even when autodialed, remained as it had been prior to the elevated tiers' creation, and took care to craft the rule's language in such a way that exempted nonprofit organizations from compliance with the newly-enacted heightened written consent requirement.

The more lenient treatment afforded to CGA under the TCPA is significant. "Showing prior express consent is substantially less burdensome than showing prior express written consent." *Reese v. Marketron Broad. Sols., Inc.*, 2018 U.S. Dist. LEXIS 77319, *14 (E.D. La. May 8, 2018). In contrast to obtaining a written acknowledgement pursuant to disclosures made at the time of consent, the FCC has defined "prior express consent" to be far less onerous, stating that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *See* 1992 FCC Order, 7 FCC Rcd. 8752, 8769.

The Complaint seeks to hold CGA liable for violating the TCPA's prohibition on placing calls without prior express *written* consent (Compl., ¶¶ 13, 38, 42), an obligation that CGA does not have. Consequently, even were the Complaint correct that the disputed calls were placed without prior express *written* consent, that would not entitle Plaintiff to any relief as it would not give rise to a violation of the TCPA for which CGA may be held liable. CGA need not establish proof of such written consent. The Complaint's allegations attempt to work an injustice against

CGA, seeking to impose upon it a burden of compliance with the TCPA that neither the statute nor the FCC require of it.  For this reason, Plaintiff has failed to state a claim against CGA for which relief may be granted, and any such claim, whether asserted individually or on behalf of a putative class, must be dismissed in accordance with Rule 12(b)(6), Fed. R. Civ. P.

## **CONCLUSION**

For the foregoing reasons, CGA respectfully requests that the Court enter an Order granting the instant motion, and dismissing the Complaint for improper venue, or alternatively, dismissing the Complaint for failure to state claim, and awarding CGA any further or additional relief that the Court deems just and proper.

Respectfully submitted,

AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile:  (561) 659-6313

By: _ /s/ Jeffrey B. Pertnoy_
Erin M. Maddocks, Esq.
Florida Bar No. 052350
erin.maddocks@akerman.com
Jeffrey B. Pertnoy, Esq.
Florida Bar No. 91939
jeffrey.pertnoy@akerman.com